IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RONNIE EDWARD MILLER, JR., #244648, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 2:21-CV-52-ECM-KFP ) |
| WARDEN CALLOWAY, et. al., | ) ) ) |
| Defendants. | ) |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

Plaintiff Ronnie Miller, an indigent state inmate, filed this action under 42 U.S.C. § 1983 challenging Defendants' alleged conduct during his incarceration at Kilby Correctional Facility. Doc. 1. He seeks monetary damages against Warden Rolanda Calloway, Captain Hudson, Sergeant Brandon Williams, and Officer Landrum. Doc. 1 at 1. Plaintiff does not specify whether he sues Defendants in their individual or official capacities.

Defendants filed an Answer and Special Report denying all claims and attaching supporting affidavits and prison documents addressing Miller's claims. Doc. 11. After reviewing the Special Report and its exhibits, the Court issued an Order requiring Miller to file a response supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 15. This Order specifically cautioned that, "unless a party

files a response in opposition presenting legal cause within **fifteen days** from the date of this Order**,** the Court may at any time and **without further notice to the parties** (1) treat the written report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is proper, and (2) rule on the dispositive motion, in accordance with the law, after considering any response filed in compliance with this Order." Doc. 15 at 2.

The Court now treats Defendants' Special Report as a motion for summary judgment and Miller's response as an opposition to the motion. Upon consideration of the motion, the Court concludes that summary judgment is due to be GRANTED in favor of Defendants.

**II.    SUMMARY JUDGMENT STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of

the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se status does not mandate a disregard of elementary principles of production and proof in a civil case.

### III.   FACTS

Miller alleges that he and other inmates began a hunger strike on January 1, 2021, in "peaceful protest against certain deplorable living conditions inside of Kilby Correctional Facility." Doc. 1 at 2. Thereafter, Defendants Hudson and Officer Williams made death threats to him and the other prisoners as a warning over continuing the hunger

strike. *Id*. Then, at approximately 7:00 a.m. on January 4, 2021, Hudson and Williams "acted on such threats and escorted [him] out of [his] cell and watched Officer Landrum wrap a pair of handcuffs around his knuckle and beat the plaintiff." *Id*. Miller alleges he was hit in the face and head until Landrum "knocked his knuckles out of place," after which Miller was taken to the health care unit for treatment. *Id*. He also states that pictures of his "swollen face" were submitted to social media as "evidence of repeated abuse by guards at Kilby Corrections." *Id*. According to Miller, Warden Calloway had been immediately notified of the death threats after they were made, but she "refused to intervene or even investigate the matter." *Id*.

The record confirms that Miller and other inmates began a hunger strike on January 1, 2021. Doc. 11-1 at 2. On January 4, 2021, at approximately 7:20 a.m., Officer Landrum was assigned to the Restrictive Housing Unit, where Miller was housed. Doc. 11-2 at 2. Landrum conducted a search of Miller's cell, resulting in an interaction described as follows in the incident report:

> Officer Landrum gave inmate Miller a direct order to submit to a strip search. Inmate Miller failed to comply with the order. Inmate Miller was handcuffed, removed from his cell and his cell was searched. During the search, Inmate Miller became disorderly using profane language towards Officer Landrum. Officer Landrum grasped inmate Miller's forearm in an attempt conduct a pat search. Inmate Miller snatched away and shouted to Officer Landrum "Nigga you ain't strip searching me"! At that time inmate Miller pushed pass Officer Landrum and ran into his cell. At that time Officer Landrum followed inmate Miller in his cell and conducted a takedown placing inmate Miller on the floor. Cigarettes were confiscated from inmate Miller's boxers. . . . Inmate Miller sustained a knot on the left side of his head. Officer Landrum sustained a knot on his right hand and chose to seek outside medical treatment.

4

*Id*. On the body chart completed twelve minutes later at 7:32 a.m., the nurse noted that Miller was "[b]reathing with ease. No distress noted. Raised area noted to left side of head. Edema noted to left cheek."[1] *Id.* Photographs taken of Miller following the incident confirm the nurse's notes in the body chart. Doc. 11-13 at 2–7. Additionally, on the body chart completed on January 6 at the end of Miller's hunger strike, only two days after the alleged beating by Landrum, the nurse wrote "no apparent injuries noted." Doc. 11-5 at 4.

      Officer Landrum testified by affidavit as follows regarding the January 4 incident:

> Inmate Miller refused a strip search, but he did cuff up and come out of his cell to be searched. No contraband was found in his cell. Inmate Miller kept saying "Nigga you ain't stripping me!" I grasped his arm and attempted to pat search inmate Miller. Inmate Miller snatched away and ran in his cell. I conducted a takedown placing inmate Miller on the floor. At that time Sergeant Williams came and assisted me. Inmate Miller had cigarettes tucked in his boxers; that's why he refused the strip search. At no time did I assault inmate Miller.

Doc. 11-7 at 2. Officer Williams, who testified that he was searching another inmate cell at the time of the incident, similarly stated as follows:

> I heard a commotion coming from another cell. I exited the cell and heard the commotion coming from cell F-19. I observed Officer Landrum trying to gain control of inmate Miller. I assisted Officer Landrum and gained control of inmate Miller. All forced [sic] cease [sic]. Inmate Miller was escorted to the Health Care Unit by another Supervisor, as I stayed back and continued the searches.

Doc. 11-9 at 2.

---

[1] Miller reported to the nurse that he was physically and sexually assaulted. However, the nurse noted no bruising or drainage to the anal area, and Miller does not allege that he was sexually assaulted in his Complaint. *See* Doc. 1.

5

Williams and Hudson deny making death threats to Plaintiff or any other inmate.[2] *Id.*; Doc. 11-8 at 2. Warden Calloway testified that she was informed that Miller and other inmates were on a hunger strike but that it was peaceful and causing no disruption to the operation of the facility. Doc. 11-10 at 2. She "instructed [her] staff to ensure they follow departmental policies." *Id*. She denies ever being informed that Miller or others were receiving death threats from a member of the Kilby staff. *Id*.

## IV.   DISCUSSION

### A.   Miller's Unsworn Statements

As mentioned above, Miller was given notice that Defendants' Special Report could be treated as a motion for summary judgment. Doc. 15 at 2. The Court warned Miller that he could not rely on his unsworn pleadings to oppose the motion but, instead, must file "affidavits, sworn or verified declarations or statements made under penalty of perjury, and other evidentiary materials developed through discovery or (other appropriate means) that set forth specific facts demonstrating there is a genuine issue of material fact for trial." *Id.* The Court further advised that "[a]n affidavit is a statement in writing sworn to by the affiant under oath . . . before a notary public or other authorized officer" and, if a notary were not available, Miller could support his response with "a statement made under penalty

---

[2] Hudson also denies that he was present at the time of the alleged incident. Hudson's affidavit states, "I did not arrive Kilby Correctional Facility until 7:54 a.m., was not informed of the incident until 8:05 a.m., and did not report to the Restrictive Housing Unit until later that day." Doc. 11-8 at 2. The prison records support this testimony. The duty log for January 4 shows that Captain Hudson did not arrive until 7:50 a.m., approximately twenty minutes after Miller's body chart was completed at the health care unit. Doc. 11-14 at 2.

of perjury" pursuant to 28 U.S.C. § 1746. *Id.* n.2. The Court's Order quoted § 1746 and provided the required language for a declaration. *Id*. (advising that a party can support a matter with a written statement containing the following language: "I declare . . . under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.") *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985) (explaining notice requirements for pro se litigants).

Miller filed a three-page handwritten opposition that contained his unsworn contentions. Doc. 26. This document is not an affidavit or declaration that may be used to raise a factual issue precluding summary judgment. Indeed, the Eleventh Circuit's recent opinion in *Roy v. Ivy*, 53 F.4th 1338, 1350 (11th Cir. 2022) controls this issue. In *Roy*, as here, a pro se prisoner presented an unsworn statement in opposition to a summary judgment motion. *Id.* at 1343, 1350. The Court held the statement must meet the statutory requirements of § 1746 to be considered on summary judgment. *Id.* at 1348, 1350. At a minimum, a declarant must (1) date and sign the document, (2) state that its contents are true, and (3) place himself under penalty of perjury. *Id.* at 1348, 1350. Because the statement in *Roy* lacked any penalty-of-perjury language, it could not be considered on summary judgment. *Id.* at 1350 (adopting reasoning in *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305–1306 (5th Cir. 1988)). Excusing this omission would allow a plaintiff "'to circumvent the penalties for perjury in signing onto intentional falsehoods.'" *Roy*, 53 F.4th at 1350 (*quoting Nissho-Iwai Am. Corp.*, 845 F.2d at 1306).

Here, as in *Roy*, Miller's unsworn statement lacks the required language, and it cannot be considered on summary judgment. Thus, any factual assertions in Miller's opposition will be disregarded for purposes of this motion. *Roy*, 53 F.4th at 1350; *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (explaining that unsworn statement is insufficient to raise a fact issue precluding summary judgment).

### B.     Absolute Immunity for Official-Capacity Claims

To the extent Miller lodges claims against Defendants in their official capacities and seeks monetary damages, Defendants are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). The Eleventh Circuit has held as follows:

> [T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id*. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of

8

law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution)). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Thus, all Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity). Accordingly, all claims against Defendants in their official capacities for monetary damages are due to be dismissed.

 **C.** **Claims Against Officer Defendants in Individual Capacities**

With respect to Miller's claims against Defendants in their individual capacities, as explained below, those claims are also due to be dismissed.

  **1.** **Excessive Force Claim**

Excessive force claims brought against prison officials by convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). When analyzing an Eighth

Amendment excessive force claim, a court must determine whether force was "applied in a good-faith effort to maintain or restore discipline" or if it was inflicted "maliciously and sadistically to cause harm." *Williams v. Radford*, 64 F.4th 1185, 1196–97 (11th Cir. 2023) (citing *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010)). To make this determination, courts consider five factors: (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. *Id.* at 1196 (citing *Campbell*, 169 F.3d at 1375) (internal quotation marks omitted); *see Brown v. Warden*, No. 22-11201, 2023 WL 9016179, at *2 (11th Cir. Dec. 29, 2023) (stating "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" and enumerating five factors listed above) and *Lawn v. Sec'y, Fla. Dep't of Corr.*, No. 21-10819, 2023 WL 2292263, at *2 (11th Cir. Mar. 1, 2023) (same). "When considering these factors, 'we must also give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.'" *Id*. (quoting *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019)).

The first factor, the extent of injury, weighs against Miller. He claims Hudson[3] and Williams acted on their alleged death threats, escorted him from his cell, and watched

---

[3] As previously stated, the evidentiary submission includes the prison duty log for January 4, which shows Hudson was not present during the alleged incident. Docs. 11-8 at 2, 11-14 at 2. However, even if the Court takes Miller's statement as true, it does not change the reasoning or the outcome of this Recommendation.

10

Officer Landrum beat him with handcuffs wrapped around his knuckles to the point that Landrum knocked his knuckles out of place. Doc. 1 at 2. The undisputed medical evidence does not support an allegation that Miller was repeatedly beaten in the face and head with handcuffs wrapped around Landrum's knuckles. The body chart completed immediately after the incident notes that Miller was breathing with ease, was in no distress, and had a raised area on the left side of his head and an edema on his left cheek. The photographs taken the same day show a small knot on the left side of his head, with no bruising, bleeding, or other marks anywhere else on his body, and a body chart completed only two days later indicates that no injuries were apparent.

    The second factor is the need for application of force. Miller admits that he refused to obey Landrum's order to submit to a strip search. Docs. 1 at 1–4, 11-4 at 2. Also, he has submitted no evidence refuting Defendants' testimony that he verbally and physically persisted in his refusal after being cuffed and that he pushed past Landrum to return to his cell and prevent the search, which ultimately produced cigarettes from his boxer shorts. Doc. 1 at 1-4; Doc. 11-2 at 2; Doc. 11-7 at 2; Doc. 11-10 at 2. Thus, because Miller failed to obey an order and continued in his refusal to comply, making the use of force necessary to subdue him and complete the search, this factor weighs against Miller.

    The remaining factors address the relationship between the need for force and the amount of force used, the efforts made to temper the severity of a forceful response, and the extent of the threat to the safety of staff and inmates reasonably perceived by responsible prison officials. Even assuming Landrum used an amount of force greater than

that conceded by Defendants, as explained above, the undisputed medical evidence does not support Miller's allegations about the severity of the beating or his injuries. Based on this evidence, the amount of force used, which created a small swollen knot on Miller's head and an edema on his cheek, was proportionate to the need to subdue Miller and perform the strip search. Likewise, although Miller makes no specific allegations about the number of times he was hit or how long the alleged beating lasted, his only injuries were the knot on his head and swelling on his cheek. Thus, no evidence demonstrates that the officers failed to temper the severity of the force used, as *some* degree of force was required to overcome Miller's resistance and carry out the search. Finally, because Miller was refusing to be searched, it was reasonable for Landrum to perceive that Miller was attempting to conceal contraband that posted a threat to the safety of the staff and inmates.

Although the Court is required on summary judgment to accept Miller's version of facts as true, he is not relieved from his burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard,* 548 U.S. at 525. Here, the undisputed evidence demonstrates that the force used against Miller was applied in a good-faith effort to maintain or restore discipline after Miller refused to obey orders and submit to a strip search, and it creates no "reliable inference of wantonness in the infliction of pain" that was carried out "maliciously and sadistically to cause harm." Miller's injuries—a small knot on the head and some swelling of his left cheek—are inconsistent with his allegations that he was beaten by Officer Landrum with the intention to carrying out alleged death

threats. On this record, the Court finds that no reasonable jury could conclude the amount of force used against Miller violated the Eighth Amendment.

### 2. First Amendment Retaliation Claim

As mentioned above, Miller claims he was beaten by Landrum while on a hunger strike in "peaceful protest against certain deplorable living conditions" at Kilby Correctional Facility. Doc. 1 at 2. "A hunger strike may be protected by the First Amendment if it was intended to convey a particularized message." *In re Soliman*, 134 F. Supp. 2d 1238, 1253 (N.D. Ala. 2001) (quoting *Stefanoff v. Hays Cnty., Tex.*, 154 F.3d 523, 527 (5th Cir. 1998) (citations omitted)). Therefore, although Plaintiff does not specifically articulate a retaliation claim based on his First Amendment rights, reading his pro se Complaint liberally, the Court construes the allegations to assert a First Amendment retaliation claim. *Beard,* 548 U.S at 525.

To move forward on a claim for retaliation, an inmate must establish three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the defendant's retaliatory conduct would likely deter a person of ordinary firmness from engaging in the speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *Williams*, 64 F.4th at 1192; *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

To determine if Miller has established a causal connection between his hunger strike and the force used against him, the Court must consider whether Landrum, Hudson, and

13

Williams were "subjectively motivated" to discipline Miller because he was protesting conditions of his facility through the hunger strike. *Williams*, 64 F.4th at 1193 (citing *Smith*, 532 F.3d at 1278). This motive analysis is subject to a burden-shifting framework, under which Miller must first show that the hunger strike was a motivating factor in the alleged beating and Defendants must then show their actions would have occurred irrespective of the hunger strike. *Id.* (citing *Smith*, 532 F.3d at 1278) (noting "that most courts resolve this subjective motivation issue under" the burden-shifting framework established in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), which concerned employment retaliation) (additional citations omitted). On summary judgment, the plaintiff carries the ultimate burden of proof; thus, if the Defendants are able to produce a legitimate reason for the action, Miller must produce "affirmative evidence from which a jury could find that [Miller] has carried his burden of proving the pertinent motive." That is, he must put forward enough "evidence from which a jury could find by a preponderance of the evidence, that retaliation was the but-for cause of the challenged action." *Rager v. Augustine*, No. 5:15CV35/MW/EMT, 2017 WL 6627416, at *7 (N.D. Fla. Nov. 8, 2017), *report and recommendation adopted*, No. 5:15CV35-MW/EMT, 2017 WL 6627784 (N.D. Fla. Dec. 28, 2017), aff'd, 760 F. App'x 947 (11th Cir. 2019) (citing *Crawford–El v. Britton*, 523 U.S. 574, 590–95, 600 (1998)); *Allen v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 836, 840 (11th Cir. 2014) ("For the third element, a prisoner must allege facts showing that the alleged retaliatory conduct would not have occurred but for the retaliatory motive.") (citation omitted); *Emory v. Thomas*, No. CV 322-028, 2023 WL 2780727, at *7

14

(S.D. Ga. Apr. 4, 2023), *report and recommendation adopted*, No. CV 322-028, 2023 WL 3230501 (S.D. Ga. May 3, 2023) (same). "If there is a finding that retaliation was not the but-for cause of the action complained of, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Id*. (citing *Hartman*, 547 U.S. at 260 (citing *Mt. Healthy*, 429 U.S. at 287)).

Assuming Miller could meet the first two elements, which the Court does not decide, he cannot establish a causal connection between the hunger strike and the force used against him on January 4. The hunger strike began on January 1. Miller alleges that he began receiving death threats from Hudson and Williams "if the strike continued" and that Hudson and Williams carried out those threats on January 4 when they escorted him from his cell for the strip search and watched Landrum beat him. Other than this conclusory assertion, Miller has presented no evidence that his hunger strike was a motivating factor in the force used against him on January 4. Indeed, he has not disputed the evidence in his handwritten statement prepared after the incident, which fails to mention the hunger strike but explains a different reason for the use of force against him. Both this statement and the record evidence noted above provide a different—non-retaliatory—motive for the force. In the statement, Miller explained that Landrum's purpose in coming to the cell was a routine "shake down," Miller refused the strip search, and Landrum used force after this refusal. Doc. 11-4 at 2. Also, Miller has not disputed that cigarettes were confiscated from his boxers after Landrum placed him on the floor to complete the search. Miller has not put

15

forward evidence from which a jury could find by a preponderance of the evidence that retaliation was the but-for cause of the use of force. For these reasons, the Court concludes that summary judgment is due to be granted on Plaintiff's first amendment retaliation claim because Plaintiff has failed to create a question of fact as to causation.

### D. Claims Against Warden Calloway

#### 1. Respondeat Superior or Vicarious Liability

To the extent Miller alleges Warden Calloway is liable in her supervisory position for the actions or omissions of her subordinates based on a theory of respondeat superior or vicarious liability, his claims fail. The law is well established that supervisory officials cannot be held liable in § 1983 actions under any theory of respondeat superior or vicarious liability. *See Belcher v. City of Foley,* 30 F.3d 1390, 1396–97 (11th Cir. 1994). As explained by the United States Supreme Court:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of respondeat superior [or vicarious liability] . . . . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (internal quotation marks, citation, and parentheses omitted).

"Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal

16

connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360–61 (11th Cir. 2003) (citations omitted). A causal connection can be established when a history of widespread abuse puts the supervisor on notice of the need for correction but the supervisor fails to do so, when a custom or policy results in deliberate indifference to constitutional rights, or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew they would but failed to stop them. *Id*. (citations omitted). This standard is "extremely rigorous." *Id*. (citation omitted).

Miller does not allege that Warden Calloway participated in the alleged incident, that there was a history of widespread abuse putting her on notice that the other Defendants would retaliate against inmates participating in a hunger strike, or that Warden Calloway directed the other Defendants to act unlawfully. Miller has not disputed Warden Calloway's testimony that, upon learning of the hunger strike, she "instructed [her] staff to ensure they follow departmental policies." Doc. 11-10 at 2. Additionally, assuming Warden Calloway knew about the death threats generally, Miller has produced no evidence indicating that she knew the other Defendants were going to act in the manner described in the Complaint on the morning of January 4. Thus, the facts alleged by Miller do not support an inference that Warden Calloway knew her subordinates would act but failed to stop them. Accordingly, Miller has failed to meet the "extremely rigorous" standard required to impose liability against Warden Calloway on theories of respondeat superior or vicarious liability.

### 2. Deliberate Indifference Claim

To the extent Miller seeks to hold Warden Calloway liable for deliberate indifference based on a failure to protect him from excessive force, the claim also fails. As explained above, the undisputed evidence does not support Plaintiff's claims that any Defendant used excessive force in violation of his Eighth Amendment rights, and Miller has no claim against Warden Calloway for failing to protect him from good faith efforts to maintain or restore discipline after Miller refused to submit to a strip search. However, even if Miller's excessive force claim survived summary judgment, any claim against Warden Calloway for failing to protect him from that excessive force would still fail.

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows the inmate faces "a substantial risk of serious harm" and, with such knowledge, disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828; *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citation omitted).

Even if Miller could establish an objectively substantial risk of harm, the Complaint alleges only that Warden Calloway "was immediately notified" of the death threats "due to her position as warden" and that she "refused to intervene or even investigate the matter."

Doc. 1 at 2. These allegations are insufficient to demonstrate that Warden Calloway had a subjective awareness of "a substantial risk of serious harm." *See Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (granting summary judgment to the deputy warden and unit manager at plaintiff's prison on deliberate indifference claims and holding that "generalized awareness of risk . . . does not satisfy the subjective awareness requirement"). Accordingly, summary judgment is due to be granted on Miller's claim failure-to-protect claim against Warden Calloway.

## V.     CONCLUSION

Accordingly, the Magistrate Judge RECOMMENDS the following:

1. Defendants' motions for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of Defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

Further, it is ORDERED that by **March 1, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the

Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *See* 11th Cir. R. 3–1.

DONE this 16th day of February, 2024.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE